ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
SEP 29 2006
U.S. COURT OF FEDERAL CLAIMS

CA, INC.
One CA Plaza
Islandia, NY 11749

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No.: 06-681 C

Judge: ____________

## COMPLAINT

CA, Inc. ("CA"),[1] for its Complaint in this action, alleges as follows:

## INTRODUCTION

1. From 1998 to 2002, CA provided software and software support services to U.S. Naval Forces Europe ("NAVEUR") pursuant to various contracts. Even though the Navy accepted and used CA's software and services, it has only partially satisfied its obligation to pay for the software and services. Also, the Navy used CA's software on more computers than permitted by the relevant software licensing agreements.

2. CA submitted a certified claim to the cognizant Navy contracting officer to obtain payment for its software and services and for the Navy's violations of the licensing terms. However, the contracting officer seeks to delay for over a year the determination of CA's breach of contract and other claims. Accordingly, CA seeks an order from this Court directing the contracting officer to issue a determination on CA's certified claim in 60 days. This Complaint

[1] Until February 1, 2006, CA was named Computer Associates International, Inc.

RECEIVED
OVER THE COUNTER

SEP 2 9 2006

THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

also presents CA's claim for a Takings Clause recovery for the Navy's over-usage of CA's software (use on too many machines and use after licenses revoked), and asserts alternative claims for recovery pursuant to Federal Acquisition Regulation ("FAR") section 51.102(f)(2) and for a further Takings Clause recovery.

## PARTIES

3. Plaintiff CA is a Delaware corporation with its principal place of business in Islandia, New York. CA is one of the world's largest publishers of management software; designing, marketing, and licensing computer software products that allow businesses to run, manage, and automate critical aspects of their information technology environments.

4. The Defendant is the United States of America, acting by and through the Department of the Navy (the "Navy").

## JURISDICTION

5. This Court has jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. § 605(c)(4), "to direct the contracting officer to issue a decision" on CA's certified claim "in a specified period of time".[2]

6. This Court has jurisdiction under 28 U.S.C. § 1491 (the Tucker Act) with respect to CA's claims that the government is responsible for the indebtedness incurred by a contractor under FAR § 51.102(f)(2) and that the Navy took CA's property in violation of the Fifth Amendment.

[2] This Court does not currently possess jurisdiction over CA's contract claims, but will gain such jurisdiction upon CA's filing of an action "within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." 41 U.S.C. § 609(a). Because the Navy has delayed issuing its decision, CA is unable to file a complaint under the Contract Disputes Act based on its certified claim.

## STATEMENT OF FACTS

**A. In 1997, CA entered into a Federal Supply Schedule Contract with the United States**

7. In 1997, CA entered into a Federal Supply Schedule contract, number GS-35F-0793J,[3] with the U.S. General Services Administration ("the GSA Schedule Contract"). The terms and conditions of the GSA Schedule Contract were largely established by federal procurement policies and procedures. In accordance with the GSA Schedule Contract, the federal government and its authorized agents could streamline purchasing of CA software and services by issuing purchase orders pursuant to the GSA Schedule Contract.

8. The GSA Schedule Contract requires that payment shall be made for items accepted by the ordering activity that have been delivered. See 48 C.F.R. § 52.212-4(i).

9. The GSA Schedule Contract offered software licenses to the government and set forth license terms and conditions.

10. CA's software license generally restricted the government's use of CA's software to "one identified Central Processing Unit (CPU) at a Site identified on the Delivery Order". Software licensees could not "distribute a Computer Program or any modifications or enhancements thereto, except for use on the designated CPUs and operating systems and at the installation set forth in the Delivery Order." Certain types of CA software were subject to variations of these general prohibitions.

11. From 1998 to 2002, the Navy through PSC, Inc. ("PSC") as its purchasing agent,[4] made five purchases for CA software and services under CA's GSA Schedule Contract. On

---

[3] Numbered as GS-35F-5169H prior to August 31, 1999.

[4] On information and belief, sometime prior to 1998, PSC entered into a classified contract (no. N68786-97-C-6461) with the Navy to provide goods and services to, among others, NAVEUR and the Commander in Chief of U.S. Naval Forces Europe ("CINCUSNAVEUR"). On

information and belief, CA only received partial payment for these purchase orders and the total amount still due on the purchase orders is $6,782,170.99.

**B. From 1998 through 2000 the Navy through PSC ordered CA Software and Services from CA's GSA Schedule Contract**

12. From 1998 through 2000, the Navy, through its purchasing agent PSC, issued purchase orders for software and services pursuant to CA's GSA Schedule Contract. These purchase orders were issued on September 30, 1998 (no. 980483), September 5, 2000 (no. 200469), and September 29, 2000 (no. 200530).

13. CA provided software to the Navy, via PSC, and supplied training and other services directly to the Navy, in compliance with the terms and conditions in these purchase orders.

14. The software CA delivered pursuant to these purchase orders was subject to the software usage limitations in the licensing terms and conditions in CA's GSA Schedule Contract. On information and belief, the Navy reproduced, installed, and used CA's software.

15. The total amounts due under the purchase orders were $1,380,926 (no. 980483), $91,735 (no. 200469), and $1,014,920 (no. 200530). On information and belief, CA only received partial payment for these purchase orders and the amounts still due are $528,174 (no. 980483), $58,256 (no. 200469), and $924,920 (no. 200530), plus interest and other damages to which CA is entitled.

**C. CA entered into a Blanket Purchase Agreement with the U.S. Army**

16. In 1999, CA entered into a blanket purchase agreement with the U.S. Army (the "Army BPA") (no. DAAB15-99-A-0018), which incorporates the terms and conditions of CA's

---

information and belief, PSC on behalf of the Navy placed all orders with CA pursuant to PSC's classified prime contract with the Navy.

GSA Schedule Contract and provides a Department of Defense-approved mechanism pursuant to which components of the Department of Defense and authorized contractors can purchase software and services from CA.[5]

17. In accordance with Department of Defense policy (*see* ¶ 16 n.5, *infra*), the Army at all relevant times maintained an inventory of software licenses for CA's Unicenter TNG base software,[6] which the Army resold, at least in part, to other Department of Defense components.

18. On March 21, 2002, pursuant to FAR § 51.101, D.F. Kerrigan, Deputy Chief of Staff for Command, Control, Communications and Computers for NAVEUR authorized PSC, on behalf of the Navy, to purchase CA software and services from CA's Army BPA:

> 1. This letter serves as an authorization for PSC Inc. to utilize the PM, Small Computer Program (PM SCP) to procure software and services provided by Computer Associates International, Inc. [in] support of Commander in Chief US Naval Forces Europe (CINCUSNAVEUR), as awarded under contract # N68786-97-C-6461.
>
> 2. The contract to which this authorization applies is CA Enterprise Management Software Blanket Purchase Agreement DAAB15-99-A0018.

---

[5] Effective July 26, 2000, and possibly earlier, official Department of Defense policy *required* all components of the Department of Defense to acquire certain software from the Army BPA and further stated that government contractors "should" be authorized, pursuant to FAR § 51.101, to order software through the Army BPA. *See* Department of Defense, Guidance and Policy Memorandum No. 12-8430—Acquiring Commercially Available Software §§ 6.2.1, 6.2.3 (July 26, 2000).

[6] Unicenter TNG software products simplify the installation of new software on hundreds or thousands of computers within an organization, allow administrators of a computer network to troubleshoot computer problems without being physically proximate to a user's desktop or laptop computer, and otherwise aid in administration of computer networks. Unicenter TNG is comprised of a base software suite and can be expanded with optional software components. "TNG" refers to "The Next Generation" of Unicenter products.

**D. On March 27, 2002, under authority of the Navy, PSC ordered from CA's Army BPA**

19. On March 27, 2002, under authority of the Navy under FAR § 51.101, PSC issued purchase orders 220105 and 220106 for software and services under CA's Army BPA and subject to CA's GSA Schedule Contract.

20. Purchase order 220105 sought Unicenter TNG *base* software from the Army, which kept an inventory of CA's software pursuant to CA's Army BPA (*see* ¶ 17, *infra*). Purchase order 220106 sought Unicenter TNG *optional* software—which can only be operated on machines operating Unicenter TNG *base* software—directly from CA. The purchase orders demonstrate that purchase order 220106 also included a commitment to CA that PSC, acting for the Navy, would fully perform purchase order 220105 by purchasing Unicenter TNG *base* software from the Army's inventory for use on the machines that would run Unicenter TNG *optional* software.

21. Software delivered to PSC for NAVEUR pursuant to these purchase orders was subject to the software usage limitations in the licensing terms and conditions in CA's GSA Schedule Contract, which the Navy accepted by reproducing, installing, and using CA's software.

22. On or about April 2, 2002, CA provided software for the Navy's use and supplied services directly to the Navy in compliance with the terms and conditions in purchase orders 220105[7] and 220106.

23. The total amount due under the purchase orders was $1,350,275.28 (no. 220105), and $5,129,304.94 (no. 220106). CA received only partial payment for its software and services.

[7] Under the Army BPA, CA on behalf of the Army furnishes any CA software licenses purchased from the Army's inventory of such licenses.

The amounts of $1,100,392.57 (no. 220105) and $4,170,428.42 (no. 220106), plus interest and other damages to which CA is entitled, remain due and owing under these purchase orders.[8]

24. CA understands that the parties intended purchase order 220105 to benefit CA by reducing CA's present liability to deliver the licenses in the Army's inventory.

25. In October 2003, CA received a letter from STG, Inc. ("STG")[9] asserting that STG did not wish to "purchase the [funding] renewal for Period 2 for the purchase orders #220105 and #220106."[10] However, because purchase orders 220105 and 220106 were for delivery of perpetual software licenses, the Renewal Period 2 payment under purchase order 220106 automatically became due on October 13, 2003.

26. Despite CA's numerous phone calls, emails, written demands for payment, meetings with PSC and STG, and communications and negotiations with the Navy, this dispute remains unresolved.

**E. The Navy used CA software in violation of its licensing agreements with CA**

27. During CA's multiple attempts to collect payment for CA software licensed to the Navy, the Navy provided CA detailed information regarding the computers on which the Navy was running CA's software, which revealed that the Navy had installed, reproduced, and used CA's software on significantly more—and/or more powerful—computers than provided for in

---

[8] Under purchase order 220105, the Navy through PSC owes $1,100,392.57 to the U.S. Army. Because this amount is unpaid, the Army did not draw down its inventory of CA licenses that the Navy had contracted to use and did actually use. Consequently, CA remains uncompensated for the $1,100,392.57 of Unicenter TNG software it delivered to the Navy.

[9] STG purchased PSC on or about May 10, 2002.

[10] The term in the purchase orders "renewal period" referred to a funding renewal, not a renewal of term licenses or the exercise of contract options.

the purchase orders. The purchase orders required compliance with the licensing terms and conditions in CA's GSA Schedule Contract.

28. The Navy's license to use CA's software required that the Navy only distribute CA software "on the designated CPUs and operating systems" and not exceed "the Maximum Power Units limitation specified on a Delivery Order . . . ."[11]

29. Fees for the software the Navy used that was in excess of the use permitted by the licensing terms and conditions, calculated using standard commercial rates, are $3,876,923.

30. Notwithstanding the large amounts due to CA, CA continued to perform on the contracts by continuing to provide software maintenance, technical support, and a software warranty.

31. On April 8, 2005, due to the Navy's continued lack of payment for the software licenses, CA sent a letter to CINCUSNAVEUR revoking the Navy's licenses to use CA software, effective May 8, 2005.

32. Nevertheless, the Navy continued to use CA's software at least through August, 2005, and, on information and belief, the continued unauthorized use included the reproduction of constituent parts of the software.

33. CA continued its attempts to resolve this dispute informally, circulating a draft certified claim to the cognizant Navy contracting officer on April 24, 2006, and meeting with the contracting officer about the claim on May 23, 2006.[12]

---

[11] The "power unit" is a unit of measurement of the computation power of a computer. Instead of licensing software on a computer-by-computer basis (*i.e.*, five desktop computers and five server computers require a total of ten licenses), CA priced Unicenter TNG software on a power unit basis—so that the effective price to use software on a given computer took into account the computation power of the computer (*i.e.*, five desktop computers each rated 1 power unit and five server computers each rated at 2 power units require a total of 15 power units of licenses).

34. The Navy has not disputed or disclaimed its acceptance, reproduction, installment, or use of CA's software or its direct acceptance of CA's software maintenance, technical support or training.

35. CA has provided software and services to the Navy according to software license agreements between CA and the Navy. The Navy has retained, retains and can never divest itself of the benefits it received through its own direct use of CA's software and direct receipt of CA's services.

36. On information and belief, all actions by the Navy or the Navy through PSC in issuing purchase orders, accepting software license agreements with CA, and in accepting goods and services from CA were performed by individuals with authority to bind the government or were known about by and explicitly or implicitly adopted by such individuals.

**COUNT I**

**(UNDUE DELAY)**

37. Paragraphs 1 through 36 are incorporated herein by reference as if set forth fully herewithin.

38. CA provided a draft of its certified claim to the Navy on April 24, 2006, and its (substantially identical) certified claim on June 12, 2006. The certified claim is 24 double-spaced pages and contains many guiding references to the underlying documents. The claim includes only one volume of exhibits, which is about one inch thick and includes most of the

[12] CA can file contract claims with the government because it has privity of contract with the government: First, CA supplied software to the Navy, via PSC, while PSC was acting as a purchasing agent for the government. Second, software licenses create contracts directly between CA as licensor and the Navy as licensee. Third, all purchase orders were pursuant to CA's GSA Schedule Contract, and in some cases, CA's Army BPA, and thus CA is *required* to treat disputes involving the purchase orders in the same manner as disputes involving the GSA Schedule contract (*i.e.*, in accordance with the Contract Disputes Act). FAR Subpart 8.4.

underlying documents. CA met with the contracting officer in order to answer any questions about the claim on May 23, 2006. The Navy has provided no substantive response to the claims.

39. The Navy contracting officer waited a full sixty days after CA filed its certified claim before providing CA with facsimile notice "of the time within which a decision will be issued." 41 U.S.C. § 605(c)(2).

40. The Navy stated a final decision on CA's certified claim will be issued no later than June 29, 2007—over *fourteen months* following receipt of the draft claim, and *over one year* following receipt of CA's claim.

41. A time period of one year and seventeen days to render a final decision on CA's certified claim is undue delay.

42. Therefore, CA is entitled to have this Court direct the contracting officer to issue a decision within a specified period of time: 60 days after the filing of this Complaint or at such other time as this Court, in its discretion, directs.

## COUNT II

## (FAR PART 51)

43. Paragraphs 1 through 36 are incorporated herein by reference as if set forth fully herewithin.

44. Under FAR Section 51.102(f)(2), an agency authorizing use of a government supply source shall be responsible for any indebtedness incurred for supplies or services and not satisfied by the contractor.

45. With respect to orders placed under CA's Army BPA pursuant to the Navy's authorization dated March 21, 2002 (*i.e.*, purchase orders 220105 and 220106), CA alleges—in the alternative to claims that the Navy is directly indebted to CA—that PSC is indebted to CA

for unpaid amounts on the purchase orders placed under CA's Army BPA. Accordingly, the Navy is responsible to CA for PSC's indebtedness.

## COUNT III

## (TAKING WITHOUT JUST COMPENSATION)

46. Paragraphs 1 through 36 are incorporated herein by reference as if set forth in full.

47. Under the Fifth Amendment to the Constitution of the United States, no private property shall be taken for public use without just compensation.

48. CA owns the intellectual property practiced by, incorporated in, or represented by the CA software, which the Navy accepted, reproduced, installed, or used.

49. The Navy effected a direct government appropriation (or physical invasion) of CA's exclusive right to reproduce or authorize reproduction of CA's software when the Navy reproduced or authorized reproduction of constituent elements of CA's original software for a public use:

a) after CA revoked the Navy's licenses to CA's software;

b) on more and different computers than the Navy was entitled to use under purchase orders 980483, 200469, 200530, 220105, and 220106; and

c) in the alternative to CA's claims alleging the existence of contracts and software licenses between CA and the Navy regarding CA's software, for all such reproduction not encompassed in subparts (a) and (b) of this paragraph.

50. On information and belief, the Navy intended to effect the direct government appropriation.

51. The Navy received the benefit of the use of CA's software without paying for the software, which came at the direct expense of CA.

52. Therefore, CA is entitled to just compensation for the Navy's use of its software.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CA demands judgment against the United States of America:

On Count I, for an Order directing the contracting officer to issue a decision within 60 days of this filing or at such other time the Court, in its discretion, directs;

On Count II, for the indebtedness to CA incurred by PSC, to be proved at trial;

On Count III, for just compensation in an amount to be proved at trial;

On all Counts, for interest and such costs, expenses, and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Date: September 29, 2006

Respectfully submitted,

Sarah Gill
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6643 (tel.)
(202) 663-6363 (fax)
sarah.gill@wilmerhale.com
*Counsel of Record for Plaintiff CA, INC.*

Of Counsel:
Jay P. Urwitz
Todd R. Steggerda
John Janecek
Kevin R. Pinkney
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6000 (tel.)
(202) 663-6363 (fax)